920 So.2d 759 (2006)
J.A.S., Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-4983.
District Court of Appeal of Florida, Second District.
February 10, 2006.
*761 James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and C. Suzanne Bechard, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
J.A.S. was adjudicated delinquent based on the circuit court's finding that he committed a battery. He complains that the State's attempt to prove the corpus delicti of the charge consisted solely of inadmissible evidence that was considered by the court over his objection. He maintains that without this evidence he was entitled to a dismissal. We agree and reverse.
The delinquency petition alleged that J.A.S. battered his father at their home. At the delinquency hearing, a Charlotte County sheriff's deputy testified that he was dispatched to the residence in response to a 911 call and interviewed both J.A.S. and the father. When the deputy began to relate what J.A.S. told him, J.A.S.'s counsel objected on hearsay grounds. The court sustained the objection, recognizing that the State could not introduce J.A.S.'s statements to the deputy as an admission against interest until it had proved the corpus delicti.
The prosecutor then asked the deputy to relate what J.A.S.'s father had told him that night. Again, defense counsel objected on hearsay grounds. The prosecutor replied that the father's statement fell under the excited utterance exception to the hearsay rule. See § 90.803(2), Fla. Stat. (2004). In an attempt to establish the predicate for this exception, the prosecutor elicited the deputy's testimony that the father was "upset." But the deputy admitted *762 that he did not manifest any physical symptoms of this mental state. He thought the father's answers appeared spontaneous and that he had no opportunity to reflect on what he should say. Initially, the deputy was not sure how long it took to reach the home after he received the dispatcher's call. But, in response to the prosecutor's questioning, he decided that it probably was about fifteen minutes. The circuit court overruled J.A.S.'s hearsay objection and allowed the deputy to disclose what the father told him.
According to the deputy, the father smelled of alcohol when the deputy interviewed him. The father stated that J.A.S. had punched him several times. He said the altercation began when he returned home and accused his son of misusing his computer. J.A.S. became irate and slapped him on the back of the head. The father said he threw his son to the floor and, in the tussle, J.A.S. punched him several times in face. The deputy took photographs of the father's injuries, which were introduced in evidence. They depicted some swelling and a cut on his face.
The deputy's testimony then returned to his interview with J.A.S. Again the defense objected, contending that J.A.S.'s statements were inadmissible hearsay. The State argued that it could introduce the statements under the hearsay exception for admissions against interest because it had proved the corpus delicti with the father's hearsay statements and with the photographs. The court overruled J.A.S.'s hearsay objection, finding that the hearsay exception for admissions against interest applied. See § 90.803(18)(a).
The deputy testified that J.A.S. was crying during their conversation. He said he was angry that his father accused him of misusing the computer so he slapped the back of his father's head. J.A.S. also admitted punching his father in the face.
The State's only other witness was J.A.S.'s mother. She did not see what happened between her son and her husband because she was in another room during the incident. She heard a commotion, hurried to the living room, and found the two of them sitting down, holding each other. She speculated that it was possible her son had caused her husband's injuries, but she did not really know.
J.A.S. moved for a judgment of dismissal at the end of the State's case, arguing that all the evidence against him was inadmissible hearsay. The court denied his motion. J.A.S. then testified, acknowledging that he hit his father. J.A.S.'s father also testified as a defense witness. He did not recall much of the incident because he had been drinking. He did remember an altercation with his son, but he did not know the details or how it started.
We begin with the court's ruling that the father's statement to the deputy was an excited utterance. To establish that exception to the hearsay rule, the proponent must show that (1) an event occurred that was startling enough to cause nervous excitement; (2) a speaker made a statement before he had time to contrive or misrepresent; and (3) the speaker was under the stress of the excitement caused by the event. See Rogers v. State, 660 So.2d 237, 240 (Fla.1995). Here, the parties do not dispute that a startling event occurred. But the State's evidence under the other prongs of Rogers was insufficient.
The length of time between the event and the statement is an important consideration in determining whether the excited utterance exception applies. State v. Jano, 524 So.2d 660, 662 (Fla.1988). "[W]here the time interval between the event and the statement is long enough to permit reflective thought, the statement *763 will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process." Id. (quoting E. Cleary, McCormick on Evidence § 297 (3d ed.1984)).
At the delinquency hearing below, the only evidence on this point came from the deputy, who was not present when the father was injured. He speculated that it took him about fifteen minutes to reach the residence after he received the dispatch. The evidence did not reflect how much time transpired between the altercation and the father's statement. Moreover, even if we could assume that only fifteen minutes elapsed between the incident and the father's statement, that was certainly enough time for an adult victim to reflect on a simple fight. The only evidence to the contrary was the deputy's view that the statement seemed spontaneous. But he offered no facts to support this opinion.
To be sure, a speaker's ability to engage in reflective thought can be affected by the level of stress or excitement he suffers as a result of the event. The court in Blandenburg v. State, 890 So.2d 267, 269 (Fla. 1st DCA 2004), noted that, on occasion, statements made well after the event may be deemed excited utterances. But "the common thread running through those cases ... is that at the time of the statement, the declarants were either `hysterical,' severely injured, or subject to some other extreme emotional state sufficient to prevent reflective thought." Id. at 270 (and cases cited therein). J.A.S.'s father was injured, but not severely. He was not hysterical, shaking, screaming, crying, or displaying any physical or mental signs of excitement. The deputy testified that the father was "upset" but that subjective observation did not prove that he had no time for reflective thought.
The subject matter of a victim's statement also bears on whether it qualifies as an excited utterance. See Jano, 524 So.2d at 661. A narrative of a past event is generally not considered a spontaneous statement, Charlot v. State, 679 So.2d 844, 845 (Fla. 4th DCA 1996) (citing Green v. State, 93 Fla. 1076, 113 So. 121, 123 (1927)), nor is a statement in reply to questions from law enforcement, Blandenburg, 890 So.2d at 272. Here, the father answered the deputy's questions about how he had been injured. This was not a case in which the victim blurted out the details of a traumatic event without prompting. See, e.g., Rivera v. State, 718 So.2d 856 (Fla. 4th DCA 1998) (holding that excited utterance was proven when evidence showed that a patrol officer saw the victim screaming and waiving her hands; when he approached, she was crying, her dress was ripped, and she asked the officer to keep the defendant away from her).
The State failed to prove that the father's statement to the deputy qualified as an excited utterance. Therefore, the statement was inadmissible hearsay, and it was not competent to prove the elements of the charged crime.
Of course, the deputy also testified that J.A.S. admitted that he struck his father. But before an accused's statements may be admitted in evidence against him, the State must prove the corpus delicti of the crime. State v. Colorado, 890 So.2d 468, 470 (Fla. 2d DCA 2004). To do so, it must show that (1) the victim suffered a harm of the type contemplated by the charges and (2) the criminal act of another caused the harm. Id.
The photographs of the father's injuries established the harm contemplated under the battery statute. But the injuries shown in the photographs were of a *764 kind that easily could have resulted from an accidental stumbleparticularly given that the father had been drinking. Absent the deputy's inadmissible hearsay testimony, the State did not show that the father was injured by the criminal act of another person.
The State argues that, even without the father's statements, the corpus delicti was proved by circumstantial evidence. It relies on J.P. v. State, 895 So.2d 1202, 1205 (Fla. 5th DCA 2005), where the evidence showed that J.P.'s mother left him at home with her dogs and later returned to find one of the dogs in obvious pain. He died the next morning. After an autopsy, a veterinarian determined that the pet had been attacked with a sharp object, probably a screwdriver. The Fifth District held that this evidence was sufficient to establish the corpus delicti.
But, unlike J.A.S.'s father, who easily could have injured himself, a dog likely could not accidentally wound himself with a screwdriver. The issue in J.P. was not whether the dog was injured by a criminal act, but whether J.P. was the perpetrator. As the Fifth District accurately stated, to prove the corpus delicti the State need not show that the accused committed the criminal offense. J.P. does not assist in the resolution of this case, in which the State failed to produce admissible evidence that a criminal offense occurred.
The father's statements were inadmissible because they were hearsay. Without those statements, the State failed to prove the corpus delicti, and as such, J.A.S.'s statements, introduced through the deputy in the State's case, were also inadmissible and could not be used to prove the crime. See Colorado, 890 So.2d at 470. J.A.S.'s subsequent admission when testifying in his own defense does not change this result. Florida does not follow the federal rule, which holds that a defendant waives deficiencies in the government's evidence if the deficiency is corrected during the defense case. Compare Fed.R.Crim.P. 29(a), with Fla. R.Crim. P. 3.380(b); see also Walker v. State, 604 So.2d 475, 476-77 (Fla.1992) (stating that a defendant's motion for judgment of acquittal made at the close of the State's case is not waived by the defendant's subsequent introduction of evidence); State v. Pennington, 534 So.2d 393 (Fla.1988).
We reverse J.A.S.'s adjudication of delinquency and remand with directions to dismiss the charges against him.
SALCINES and CANADY, JJ., concur.